Ruth Peters
vs.
United Electric Railways Co.

No. 87232.

July 18, 1932.

CAPOTOSTO, J. The jury returned a verdict for $8,000 for the plaintiff in an action of negligence. The defendant asks for a new trial both as to liability and damages.

About 7:30 P. M. December 23, 1930, the plaintiff, a woman 29 years of age. was waiting with a younger sister for a Pawtucket bus at the bus stop on the easterly side of East Avenue near the northerly corner of Dryden Avenue in the City of Pawtucket. Snow had fallen on that day from between 4 to 5 A. M. until 4:32 P. M. continuously. The snow-plow had removed some snow from the center of East Avenue and thrown it to the side of the street. The temperature was just below freezing. The road and sidewalks were slippery.

East Avenue, approaching the point of accident from the direction of Providence, presents a long and appreciable downgrade. The roadway itself is a smooth tar surface. East Avenue is a crowned road with a pitch easterly of some 4% and deflects to the left in a curve beginning at the northerly corner of Dryden Avenue.

The defendant's driver is charged with improper operation of the bus in view of highway conditions and the absence of chains on the bus itself.

The plaintiff's claim is that the operator of the bus came down the grade at an unreasonable speed, apparently saw the prospective passengers too late to slow down gradually, attempted to make a sudden stop and, in doing so, caused the right rear of the bus to skid over the curb line and strike the plaintiff, who was on the sidewalk. The bus, as a matter of fact, did go beyond the bus stop.

The defendant claims that there was no improper operation of the bus; that the absence of chains was a benefit rather than a hindrance to operation; that the bus was late because of road conditions and was not trying to make time because of those very conditions; that the operator did not start to turn in towards the curb until near the bus stop because of the peculiar contour of the highway at that particular point; that the operator made a gradual stop; that as he was opening the doors, he felt a jar and thought that the rear of the bus had struck the curb, and that if the plaintiff had remained where she was originally, instead of walking towards the bus as it was stopping, the accident would not have happened.

In trying to impute want of due care on the part of the plaintiff, the defendant is impliedly invoking the exploded "but for" rule. There is no affirmative evidence that the plaintiff at any time stepped off the sidewalk. True, she started to go towards the rear of the bus when it was coming to a stop beyond the bus stop, but there is no testimony that she at any time went outside the line of the bus stop itself. Some argument is sought to be made from the position of the plaintiff immediately after the accident. Any contention along this line, from the slim evidence in this case, is mere speculation. Indeed, one must be a prophet to tell how and when he is going to fall when suddenly unbal-

anced on an icy surface, especially if the loss of balance is due to a sudden and unexpected force. If the plaintiff started to walk along the sidewalk towards the place where the bus was stopping beyond the bus stop, she was doing what every reasonable person would have done under the same circumstances. Even though it is said that at a former age the mountain went to Mohammed when he refused to go to the mountain, in our prosaic times a prospective passenger would in all probability find himself a natural appendage to a bus stop if he waited for a bus which had gone beyond that point to back up for his accommodation. The evidence does not show any want of proper care on the part of the plaintiff.

As to the defendant's negligence, it was a clear-cut question of fact. With the bus equipped as it was and with the difficulties of the highway, natural and created, known or apparent to the operator, did the driver operate the bus with the prudence that ordinary caution demanded at that time? The jury decided that he did not. By its verdict, it found that the operator was driving a vehicle, not equipped with chains, down an appreciable grade made slippery by snow and ice, in high gear and at a speed—whatever the speed may have been—that sent the bus beyond the designated place where prospective passengers had a right to expect that he could and would stop.

The operator himself attributes his conduct to caution rather than to neglect, by saying that he made no attempt to stop at the bus stop because of the slippery condition and the slant of the road. His claim is that he purposely went a little beyond the regular stop to avoid the possibility of skidding. On cross-examination, he did say, however, that from the moment he saw the two girls at the bus stop, that is, from 150 to 200 feet away, he figured that it would be unsafe to stop there. The operator, hu-

manly enough, gave himself the benefit of every possible doubt in his testimony.

The jury apparently did not believe the defendant's explanation and was amply justified in doing so.

The question of damages also deserves consideration inasmuch as the defendant claims that they are excessive. Before the accident, the plaintiff had worked steadily as spinner for 14 years. During this time, she had always been in good health and had enjoyed the usual relaxations to which her sex and age justly entitled her. After the accident in question, she claims that her life has changed; she is easily tired by her work, which requires her to be continually on her feet. She was forced to live with a friend near her place of employment, because she could not stand going back and forth to her own home, and she has been obliged to forego many social activities and amusements. Her life has lost its bright spots through physical and nervous exhaustion which demand from her continued rest in order that she may earn a modest living.

What reason is there for this change? Her injuries were serious and, although no visible deformities resulted, common sense tells us that her entire system must have suffered damage which could easily escape the diagnosis and prognosis of the most learned doctors. The plaintiff sustained complete breaks in the lower pelvis in four distinct places, one on the right and three on the left. The right fracture and one of the three on the left were in a line with that part of the pelvis which forms the socket into which the thigh bone fits and rotates. She also sustained complete fractures of the third, fourth and fifth ribs, in the back, about two inches from the spine. To say, as counsel for the defendant says, that there was merely a bone injury in each particular instance, is to say that the living human body is nothing more than the

framework itself. The wrench, shock, and consequent unbalance to the most delicate mechanism known to science cannot easily be cast aside by the fortunate knitting of bones. The plaintiff for over six weeks must have suffered severely as she lay immobilized on a fracture board. She entered Memorial Hospital in Pawtucket on December 23, 1930, left that institution on February 18, 1931, went through a serious period of convalescence and returned to her work around July 8, 1931, when barely recovered from the first effects of her injuries. Since then her life has been one of retirement and of extreme care in the hope of retaining sufficient strength to carry on her work and of enjoying once more, some time in the future, the modest pleasures of life that she is justly entitled to. When this last hope of hers will materialize is problematical.

The plaintiff impressed the Court with her sincerity. Her sufferings could be inferred not only from her serious injuries but were obviously observable in her pallor and unfeigned weakness in the court room. Her total expenses amounted to around $1,200. The jury brought in a verdict of $8,000. This sum may be somewhat high but not so high as to be outside the realm of sympathetic discretion. However, all things considered, the Court believes that the jury's award may be reduced somewhat. The sum of $6,500 is sufficiently conservative and adequate to do justice to the parties concerned.

If the plaintiff, within five days from the filing of this rescript, shall remit all of said verdict in excess of $6,500, the defendant's motion for a new trial is denied, otherwise it is granted.

Plaintiff's attorneys: Messrs. Hogan & Hogan.

Defendant's attorney: Clifford Whipple.